**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT FLORIDA**

JEWELRY REPAIR ENTERPRISES, INC., d/b/a
FAST-FIX JEWELRY AND WATCH REPAIRS,
a Pennsylvania Corporation,

Case No.:

Plaintiff,

v.

MCNEIL JEWELRY, INC., a Texas corporation,
ROBERT McNEIL, an individual, and
MARIA McNEIL, an individual,

Defendants.

_______________________________________/

## COMPLAINT

COMES NOW, Plaintiff, JEWELRY REPAIR ENTERPRISES, INC ("Plaintiff" or "JRE"), by and through the undersigned attorneys, and sues Defendants, MCNEIL JEWELRY, INC. ("McNeil Jewelry"), ROBERT McNEIL ("Robert"), and MARIA McNEIL ("Maria"), (collectively, the "Defendants"), and in support thereof states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action wherein the damages exceed $75,000, in addition to an award of Attorneys' Fees and Costs.

2. JRE is a Pennsylvania corporation with its principal place of business at 1515 S. Federal Highway Suite 412 Boca Raton, Florida 33432.

3. Robert is an adult individual, is President of McNeil Jewelry, and is a Texas resident.

4. Maria is an adult individual, is a Vice President of McNeil Jewelry, and is a Texas resident.

5. McNeil Jewelry is a Texas corporation with its principal place of business located at 11201 Round Lane East, Haslet, TX 76052.

6. The renewed Franchise Agreement and Addendum (the "Agreement") entered into by the parties, at Section 13.1, provides for all lawsuits arising under the Agreement to be brought in a Florida state court within Palm Beach County, Florida, or, in the United States District Court, Southern District of Florida. *The Agreement is attached and incorporated herein as **Exhibit "A."***

7. This Court has jurisdiction over the parties and subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 and 1338, in that the action arises in part under the laws of the United States of America, specifically 15 U.S.C. § 1051, *et. seq.* (the "Lanham Act"). Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because of the amount in controversy exceeds $75,000 and there is diversity of citizenship of the parties.

8. Venue for this action is predicated upon Section 13.1 of the Agreement, wherein the parties agreed that any legal proceeding appropriately brought in federal district court be brought in the Southern District of Florida.

**GENERAL ALLEGATIONS**

9. JRE is a franchisor of the business model known as "Fast-Fix Jewelry and Watch Repairs." Each franchise location operates as a jewelry and watch repair business, which offer products and services from a kiosk or small in-line store. As part of its franchise model, JRE owns and licenses the use of certain trademarks and proprietary information to franchisees.

10. JRE owns the trademark "Fast-Fix" and related designs (the "Mark"), which is registered on the United States Patent and Trademark Office's ("USPTO") Principal Register at Registration Numbers: 3,707,598; 3,048,421; and 3,067,269.

11. JRE franchisees are licensed to use the Mark to operate franchise locations which utilize JRE's proprietary operating system pursuant to the terms and conditions of the JRE franchise agreement that is entered into by and between JRE and each franchisee.

12. JRE's franchisees are also licensed to use JRE's proprietary business methods, procedures, confidential information, standards, and related intellectual property (collectively, the "JRE System"), all of which are disclosed to JRE franchisees in confidence pursuant to their respective franchise agreements.

**A. The Franchise Agreements and applicable sub-lease with Defendants**

13. On November 1, 2016, Plaintiff entered into the Agreement with each of the Defendants: McNeil Jewelry, Robert (in his individual capacity), and Maria (in her individual capacity). Under the Agreement, the Defendants obtained the right and undertook the obligation to operate a "Fast-Fix" franchise location at the Hulen Mall, with an address of 4800 S. Hulen Street, #2080, Fort Worth, TX 76132 (the "Franchise Location") for a term of ten years. *See Agreement at Article 2 and 7.*

14. As provided for under the Agreement in Section 7.1(b), JRE elected to employ its "lessee/sub-lessor" model for its franchise relationship with Defendants. Thus, for the Franchise Location, JRE first entered into a lease agreement with the location's owner, Hulen Mall, LLC, with the intent to subsequently sub-lease the location to a franchisee. *See the Lease dated May 26, 2016 with Hulen Mall, LLC, attached and incorporated herein as* ***Exhibit "B."*** Defendants became that franchisee, as JRE and Defendants thereafter entered into a Sub-Lease for the

Franchise Location on November 1, 2016 (the "Sub-Lease"). *See Sub-Lease attached and incorporated herein as* ***Exhibit "C."*** As with the Agreement, the individual Defendants signed the Sub-Lease in their individual capacity, in addition to executing the agreement on behalf of McNeil Jewelry. *See p. 10 of Sub-Lease.*

15. Under Sections 8, 9, 13(b), and 18 of the Sub-Lease, in addition to being bound thereunder, each of the Defendants assumed and became bound by the obligations and conditions previously imposed by the Agreement. Section 7.1 of the Agreement affirms the same.

16. Section 22 of the Sub-Lease specifically adopts all provisions within the Agreement which pertain to dispute resolution, choice-of-law, choice-of-forum, jurisdiction, and venue.

**B. The Defendants Failed to Comply with the Agreement and Sub-Lease**

17. Defendants have failed to comply with the Agreement and Sub-Lease by:

a) failing to pay the $10,000 Renewal Fee that was due in November 2016 as required by Section 2.5(c) of the Agreement, and the Addendum thereto;

b) failing to send JRE the requisite Sales Reports for November 2016, December 2016, January 2017, and February 2017 as required by Section 4.5(a)(ii) of the Agreement;

c) upon information and belief, failing to pay all Royalty Fees due for November 2016, December 2016, and January 2017 in violation of Section 4.2(a) of the Agreement;

d) failing to send to JRE the requisite financial statements for the fiscal year ending on December 31, 2016 as required by Section 4.5(b) of the Agreement;

e) failing to institute automated clearing house ("ACH") for payments due us as required by Section 4.8 of the Franchise Agreement;

f) Failing to submit the Point of Sale ("POS") System Compliance which was due in the 3rd quarter of 2016, a violation of Section 7.11(a) and Section 7.12 of the Agreement;

g) Failing to timely pay rent, a violation of Section 7 of the Sub-Lease; and,

h) Failing to obtain or provide to JRE a Certificate of Insurance naming JRE as an additional insured as required by the Sub-Lease as well as Section 11.2 of the Agreement.

18. As a result of these breaches by Defendants, JRE sent a Notice of Default letter to Defendants on February 14, 2017, which described each breach of the Agreement and Sub-Lease as described herein. *See Notice of Default letter attached and incorporated herein as **Exhibit "D."*** The Notice of Default letter was issued and delivered pursuant to Section 15.7 of the Agreement and Section 20 of the Sub-Lease. Per the letter, Defendants had ten (10) days to cure upon their receipt thereof.

19. Defendants failed to cure any of the breaches within the requisite period of time.

20. As a result, JRE issued a Notice of Termination letter on March 1, 2017, which terminated the Agreement and Sub-Lease, and informed Defendants of their post-termination obligations. *See Notice of Termination letter attached and incorporated herein as **Exhibit "E."***

**C. Remaining Obligations of Defendants under the Agreement and Sub-Lease**

21. Defendants' post-termination obligations arise from Sections 8.4, 12.3, 12.6, and 15.10 of the Agreement, as well as Section 11 of the Sub-Lease.

22. As a result of termination of the Agreement and Sub-Lease, Defendants must:

a) vacate the Franchise Location;

b) pay JRE the Base Rent and Additional Rent for the remaining term of the Sublease, less the $10,000 Security Deposit, which JRE will apply to future Base Rent;

c) make available all equipment and personal property subject to the Agreement and Lease in the event that JRE chooses to exercise its right to purchase same;

d) return to JRE all documents, instructions (including all operations data instruction material), manuals, display items, materials, promotional aids and all writings bearing the Fast-Fix Jewelry and Watch Repairs name;

e) refrain from copying or retaining any of the above-described items;

f) refrain from implementing or using the above-described items in any other business;

g) cease using the "Fast Fix Jewelry and Watch Repairs" trademark;

h) destroy all stationary, business cards, etc. bearing the name;

i) refrain from, directly or indirectly, identifying in any manner as a JRE franchisee, or publicly identify as a former franchisee, or use any of JRE's Confidential Information, Marks, signs, symbols, devices, procedures or other materials that constituted part of the franchise;

j) transfer your franchise related telephone numbers and listing to JRE;

k) pay liquidated damages equal to the average monthly payment of Royalty Fees over the past 36 months during which Defendants operated, times the number of months remaining in the unexpired term of the Agreement at the time of default; and,

l) comply with the post-termination covenants not to compete, not to solicit, and not to disparage JRE for a period of twenty-four (24) months after termination.

23. Defendants have failed to comply with any of the above-described continuing obligations.

**D. Continuing Harm to JRE as a result of Defendants' Actions**

24. Upon information and belief, despite termination of the Agreement and Sub-Lease, Defendants continue to operate the Franchise Location as JRE franchise. Additionally, Defendants continue to use the JRE System, related proprietary information, Mark, telephone listings, and continue to market the Franchise Location as a JRE franchise.

25. Defendants' actions are improperly appropriating JRE's Mark, thereby diluting JRE's goodwill and reputation. Thus, Defendants ostensibly intend to trade on JRE's reputation in connection with operating a competing business.

26. Additionally, on March 21, 2017, the owner of the Franchise Location issued a letter to both JRE and Defendants, advising that tenant [which is JRE] had failed to perform its obligation to make payment to owner as required under the Lease. *See letter from owner attached and incorporated herein as Exhibit "F."* Under the Sub-Lease, Defendants are solely responsible for payments required under the Lease. *See Sub-Lease at Section 4.*

27. JRE has issued a three-day notice to quit or pay rent, but Defendants have done neither. *See Three Day Notice letter attached and incorporated herein as Exhibit "G."*

28. As a result of Defendants' actions, JRE may be subject to an action for eviction and damages by the owner of the Franchise Location.

29. Thus, Defendants' continued operation of their competing business at the Franchise Location has caused, and will continue to cause, irreparable harm to JRE. This harm includes, but may not be limited to: diverting business away from JRE; diminishing JRE's goodwill among its customers; diluting JRE's Mark; and, lost profits.

30. Moreover, Defendants' actions are a breach of the applicable Non-Compete requirements as imposed by the Agreement under Section 8.4, which prohibits Defendants from operating a competitive business within a twenty-five (25) mile radius of a Fast-Fix franchise location for a twenty-four (24) month period following termination. Section 8.4(c) similarly prohibits Defendants from engaging in conduct that will "interfere with, disturb, disrupt, decrease or otherwise jeopardize the business of Franchisor or any of its other franchisees" for that same 24-month period.

31. The Non-Compete clause serves to protect several legitimate business interests. Among other things, the Non-Compete protects against the erosion and dilution of Plaintiff's goodwill, marks, tradename, and franchise. The Non-Compete also protects against erosion and dilution of Plaintiff's customer base, business strategies, and confidential materials. Simply put, to permit franchisees to breach their franchise agreement, reap the benefits of an established franchise, and market the same services to the same customer base, would all undermine the entirety of the franchise business model.

32. JRE retained the undersigned counsel and has agreed to pay them a reasonable fee for their services.

33. JRE is entitled to an award of attorneys' fees and costs pursuant to Section 13.3 of the Agreement, and also pursuant to Section 22 of the Sub-Lease, for fees and costs incurred in this matter.

## COUNT I - TRADEMARK INFRINGEMENT AND COMMON LAW UNFAIR COMPETITION

34. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein.

35. Defendants' unauthorized use of JRE's Mark, the JRE System, and related intellectual property to operate Defendants' competing business as alleged constitutes infringement of federally registered service marks and trademarks in violation of 15 U.S.C. § 1114.

36. As a direct and proximate result thereof, JRE has suffered damage to its business, reputation, and goodwill.

37. Unless Defendants' act of infringement are restrained and enjoined, JRE will be seriously and irreparably damaged.

WHEREFORE, JRE respectfully requests:

(1) that the Defendants, their officers, agents, servants, employees, and any person acting in concert with them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

(a) using the Mark or any service marks, trademarks, trade names or trade dress in connection with the advertisement, promotion, offering or rendering of services that imitate or simulate JRE's service marks, trademarks, trade name or trade dress in operating any competing business;

(b) performing any actions or using any service marks, trademarks, trade names, trade dress, words, names, styles, titles, designs or marks that are likely to cause confusion or mistake, or to deceive; or to otherwise mislead the trade or public into believing that any competing business is authorized by JRE, or in some manner affiliated with or associated with, or under the supervision or control of JRE, or that their goods and services originate from JRE; or are likely in any way to lead the trade or the public to associate any Defendants' competing business with JRE;

(c) using, in connection with any competing business, any service marks, trademarks, trade names or trade dress or engaging in any other conduct that creates a likelihood of injury to the business reputation of JRE or a likelihood of misappropriation and dilution of JRE's distinctive service mark, trademarks, trade name and trade dress and the goodwill associated therewith; and,

(d) using any trade practices whatsoever, including those complained of in this Complaint, that tend to unfairly compete with or injure JRE, its business and the goodwill appertaining thereto;

(2) An accounting of and a judgment for the profits to which PSP Franchising, LLC may be entitled;

(3) attorneys' fees pursuant to 15 U.S.C. §1117(a);

(4) treble damages pursuant to 15 U.S.C. §1117(a);

(5) costs of this action; and,

(6) such other deemed just and proper.

**COUNT II - BREACH OF AGREEMENT AND SUB-LEASE (Fees and costs incurred through Termination)**

38. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein.

39. JRE and the Defendants entered into the Agreement and Sub-Lease, each of which are clear and unambiguous as to the rights and obligations of each party.

40. Defendants failed to comply with the Agreement and Sub-Lease as to their obligations described herein.

41. Defendants breaches are material, and each and every breach entitles JRE to damages resulting therefrom. These damages include: (i) the $10,000 renewal fee; (ii) past-due royalties in an amount which will be determined after discovery is conducted; (iii) liquidated damages pursuant to Section 12.4 of the Agreement in the amount of $87,037.88; and, (iv) past-due rent owed to the owner of the Franchise Location in the amount of $12,521.42.

WHEREFORE, JRE requests judgment against Defendants for damages, plus interest; taxable costs; attorneys' fees and costs pursuant to Section 13.3 of the Agreement and Section 22 of the Sub-Lease; and for such other and further relief as this Court deems just and proper.

**COUNT III - BREACH OF CONTRACT (Post-Termination Obligations)**

42. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein.

43. JRE and the Defendants entered into the Agreement and Sub-Lease, each of which are clear and unambiguous as to the rights and obligations of each party.

44. Defendants failed to comply with the Agreement and Sub-Lease as to their post-termination obligations described herein.

45. Defendants' breaches are material.

46. JRE then rightfully terminated the Agreement and Sub-Lease after providing requisite notice to Defendants.

47. Defendants have failed to comply with their post-termination obligations as described herein.

48. As a result, JRE has suffered damages.

WHEREFORE, JRE respectfully requests that:

(1) Defendants be preliminary and permanently enjoined and restrained from directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership, corporation, or other entity, operating, owning, maintaining, engaging in, being employed by, or having any interest in any company which directly or indirectly competes with JRE, or any retail business that offers similar services and goods, for a period of two years which is, or is intended to be, located (a) at the Franchise Location; (b) within the protected territory as defined in Exhibit 3 of the Agreement; or (c) within a twenty-five (25) mile radius of the location of any other JRE franchise locations that exist, or are operating under the JRE System, as of the date of termination, as imposed by Section 8.4(b) of the Agreement;

(2) Defendants be preliminarily and permanently enjoined and restrained from using the telephone number advertised in connection with the Franchise Location and be further ordered to take all steps necessary to assign the telephone number to JRE;

(3) Defendants be preliminarily and permanently enjoined and restrained from operating under the "Fast-Fix" trade name;

(4) Defendants be ordered to comply with all other requirements of the Agreement;

(5) Defendants be ordered to return to JRE all confidential and proprietary information related to the Agreement and Sub-Lease, or related to operating a JRE franchise, including any copies thereof, and any other related information and materials furnished to Defendants.

(6) That as a result of the Defendants' various breaches, including those under the Franchise Agreement, that Defendants' rights under the Sub-Lease are terminated;

(7) This Court grant an award to JRE for attorneys' fees and costs pursuant to Section 13.3 of the Agreement and Section 22 of the Sub-Lease; and,

(8) This Court grant any other relief deemed just and proper.

**COUNT IV - ACCOUNTING**

49. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein.

50. JRE and Defendants entered into the Agreement, which is clear and unambiguous.

51. Pursuant to the Agreement at Sections 4.2(a)-(c), Defendants owe to JRE royalties in the amount of 6% of monthly Gross Sales.

52. The Agreement requires that Defendants must submit an Audited Annual Statement of Gross sales, in part to ensure payment of the proper amount of royalties to JRE. *Id. at Section 4.2(c); see also inspection rights afforded to JRE at Section 7.10.*

53. The amount of the Defendants' revenue from operating a competing business by, at least in part, utilizing the JRE Mark and the JRE System, has caused damages to JRE.

54. JRE requires an accounting of Defendants' revenues prior to ascertaining JRE's damages which have resulted from Defendants' wrongful conduct.

WHEREFORE, JRE respectfully requests an accounting of, and judgment for, profits to which JRE may be entitled, and an award for attorneys' fees and costs pursuant to Section 13.3 of the Agreement and Section 22 of the Sub-Lease.

**COUNT V - DECLARATORY RELIEF**

55. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein

56. An actual and substantial controversy exists between Plaintiff and Defendants over the Defendants' duty to comply with the Agreement and Sub-Lease, and the termination or forfeiture of Defendants' rights under the Agreement and Sub-Lease.

57. This case is justiciable because Defendants have committed multiple breaches of the Agreement and Sub-Lease, and because Plaintiff has properly terminated same.

58. Declaratory relief will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

WHEREFORE, JRE respectfully requests that this Court enter a Declaratory Judgment which determines and declares that:

(1) The Agreement has been terminated and the Defendants are obligated to comply with all post-termination provisions thereunder;

(2) The Sub-Lease has been terminated and Defendants have no further rights thereunder;

(3) Defendants must immediately vacate the Franchise Location;

(4) JRE is entitled to an award for attorneys' fees and costs pursuant to Section 13.3 of the Agreement and Section 22 of the Sub-Lease; and,

(5) JRE is entitled to any other relief deemed just and proper.

**COUNT VI - COMMERCIAL EVICTION**

59. JRE reallages and incorporates paragraphs 1 - 33 as if fully set forth herein.

60. This is an action for eviction of Defendants as commercial tenants under Sections 83.20 and 83.11, Fla. Stat., and is brought pursuant to the summary procedure statute, Section 51.011, and under the applicable provisions of the Agreement and Sub-Lease.

61. Section 51.011 requires that Defendants respond within five (5) days after service of this Complaint.

62. Jurisdiction and Venue for this cause of action is proper in this forum pursuant to Section 13.2 of the Agreement, which states that any dispute arising between the parties will be governed by Florida law.

63. Defendants have failed to pay rent as required under the Sub-Lease, where Jewelry Repair Enterprises, Inc. is the "Sublessor," and Defendants are collectively the "Sublessee." Sublessee is required to make all payments to Hulen Mall, LLC, the Landlord under the preceding Lease with Sublessor.

64. To date, Sublessee has failed to pay in the sum of $12,521.42 dollars for the rent and use of the Franchise Location.

65. Sublessee was properly noticed as required under the Agreement, Sub-Lease, and Florida Statutes.

66. Plaintiff is therefore entitled to summary procedure for eviction and recovery of the Franchise Location.

WHEREFORE, JRE demands summary procedure and final judgment for possession of the Franchise Location against any and all Defendants, the issuance of a writ of possession for the Franchise Location, an award of attorneys' fees and costs pursuant to Section 13.3 of the Agreement and Section 22 of the Sub-Lease, and any other relief deemed just and proper.

Dated: 3/29/17

*Respectfully submitted,*

NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 686-3307
Facsimile: (561) 686-5442
E-mail: nnason@nasonyeager.com
ntennyson@nasonyeager.com
*Attorneys for Plaintiff*

By: ______________________
NATHAN E. NASON
Florida Bar No.: 511218

By: ______________________
NOAH B. TENNYSON
Florida Bar No.: 73605